May it please the Court, my name is Amir M. Abdullah. I'm here for the respondent for Mr. Howlader. The issue before this Court is whether or not the inconsistencies in the and I believe that the discrepancy or omissions are minor and are not material to the claim. Am I correct, Counsel, that this is a pre-real ID Act? Yes, Your Honor, and therefore should not lead to a finding of incredible by the immigration judge. Here's what bothers me most about the case that your client's putting forward on the credibility question. We have a determination by the federal government that the paper ostensibly from the hospital is fraudulent. And in combination with that, we have testimony from your client that the hospital that he went to, this hospital, is a half a mile from the house, yet we have evidence from the government that the hospital is on the other side of the city, the city being the capital of Mount Kadesh, such that it's not going to be half a mile and it's not going to be the closest one. So how do you, that strikes me, unless there's something I don't understand about it, as a sufficient basis for the immigration judge to conclude, you know, this is not a true story. So how do I deal with that? Your Honor, I believe the testimony of the respondent was, he clarified the situation and he explained to the judge, you know, how this happened and how did he get to the hospital. And basically, that's what happened. It wasn't the testimony. But the testimony, but as far as I can tell, you do not dispute that the document presented ostensibly a hospital record. You don't dispute that that's a false document? Or do you dispute that? I didn't find you disputing that that was a false document. I did dispute that, I believe, Your Honor. Did you? Yes. And now the issue is whether or not the discrepancy or the omissions are substantial enough that reach the heart of the claim and make the finding of the judge of credibility, sustain the finding of the What did you say with regard to the document? How did you dispute that? We have findings from investigators in Bangladesh that the document is fraudulent. Your Honor, the document was not made by the respondent. He received it from his family from Bangladesh. And there is court decision in this case that, you know, he's not supposed to be held responsible for it. But that's different from asserting that the document is not fraudulent. I mean, I don't see anything in the record unless I've missed something in which you say this is a genuine document. I read the testimony where your client says, well, I got the document from my son who went to the hospital to get it and he mailed it to me. I got that part. Yes, Your Honor. I don't see any evidence that you've put on that says this is a genuine document. It's not that, Your Honor. There is a court decision in this case that where the document was submitted by a relative of the respondent. He should not be held responsible for it. Well, that's different saying that your client's not to blame for this. It's very different from saying that you dispute the conclusion that it's unauthentic. You're not disputing the conclusion then that it's a fraudulent document. You're just disputing that your client was responsible for producing a fraudulent document. That's correct, Your Honor. So now we don't have any evidence of his hospitalization because that document is fraudulent. So your client has no evidence on that. Yes, Your Honor. Inconsistent evidence as to where the hospital was located that he says he went to. Yes, Your Honor. Why should the record lead us to a different conclusion here? In terms of the location of the hospital? Well, the location of the hospital, which direction he was heading on the day in which he said he was beaten. That seems like a really minor point whether you were going into your house or out of your house, whether you were purposely going someplace or whether you were just taking a walk. It seems like those are fairly trivial things. But this is the day that he claims that he was jumped by 15 to 20 guys. And his testimony does seem to be inconsistent on the question of which direction he was heading on the one day that will support his claim. Well, I believe, Your Honor, the direction he stated where he was going, but whether or not the direction where he was headed is a material to the case where he was jumped by people and beaten. It may not be material whether he was headed to the 7-Eleven or whether he was headed to a Circle K. Yes, Your Honor. But it may be relevant to whether the story is true at all as to whether he was headed to the right or to the left when he testifies inconsistently on that question. I understand, Your Honor. The BIA's theory was apparently that, you know, these inconsistencies were minor. In other words, they only concerned details, but there were several of them. And putting those together with the false hospital certificate led them to support the IJ's conclusion. Now, why can't the BIA do that? In other words, put all these things together and say, maybe each one is a small detail, but you put this whole thing together and that's sufficient to impugn his credibility. What's wrong with that? Well, Your Honor, even though they are several, but they are all minor inconsistencies, and they don't go to the heart of the claim. Well, the heart of the claim does include whether he was hospitalized. Yes. And the evidence of his hospitalization, we can't look at the document because that's a fraudulent document. We do have his testimony that he was hospitalized for a month, but that's inconsistent with some of the things that are also in the record. The date of the episode was July the 15th. Yes, Your Honor. He says, he writes in his original declaration that he was hospitalized for 30 days, but then we get evidence that it was only two weeks. Then he says, but I went back. Well, when did you go back? And where was the hospital? The hospital story just doesn't seem very convincing. We've got a fraudulent document. We've got inconsistent testimony about where the hospital is. We've got inconsistent testimony as to how long he was hospitalized. We know that, at least, he testifies that the attack was on the 15th in his testimony, and we have a declaration that he was hospitalized for 30 days, but we also have testimony that he says, I was feeling good. I was fine on the 10th of August. I mean, it just doesn't hang together. I understand, Your Honor. I understand that he tried to explain the situation, and where did he go, and where did he come from, and the hospitalization, and the time he spent in the hospital. And he tried to explain it, and once he made the effort, you know, that should be sufficient to sustain, you know, his claim. Okay. Why don't we hear from the government, and you've saved about a minute and a half. Thank you. I please the Court. My name is Nicole Nardone, attorney for the Respondent of the United States. The Court should find that the agency's denial of Petitioner's asylum withholding claims, based on adverse credibility, is supported by substantial evidence. It's important to note that Petitioner's entire claim is based on a single incident, his July 15, 2003, attack outside of his home. However, as concerning this incident, contained several inconsistencies. Plus, their Petitioner submitted a fraudulent hospital document, all of which are material to the central claim, which is, as they all go to this July 15. All of that, but, you know, his inconsistencies really are just with respect to detail. And usually, when we, in pre-ID Act cases, when we talk, when we assess credibility determinations about details, it's usually whether, well, you know, did he lie to support his claim? And these lies are not that kind of lies. No, it doesn't make any difference to his claim, whether he was going or coming, does it? Or, you know, how far it was from his house. Does that help support his claim one way or another? I don't think so. Well, with all due respect, Your Honor, these details, because there were so very few support provided by the Petitioner. I mean, there's very little information he's giving here as to what actually happened, if you look at the transcript. And so the few details that he does provide, each one of them is riddled with problems. And I think the most significant one is with regard to the hospitalization. It's significant for a number of reasons. It's significant because it goes directly, and the immigration judge points to this, it goes directly to the question of the existence or nonexistence of a severe injury. I mean, this is really the basis of the claim. Is this a case that rises to, the question is, does it go to persecution? Is this a case where the injuries were so severe that this is persecution that this person should get asylum for? And this is what the immigration judge points to. This whole question of his hospitalization, which is really the only proof he has, it's nonexistent. And that's exactly what the agency points to. As I was saying, there are inconsistencies with regard to the hospitalization. First, the Petitioner said that he was rushed to a nearby hospital. He was taken to a hospital that was a half mile from his home. He said it was the hospital that was closest to his home. Then when he was challenged that this hospital that he identified was actually across town, he said, well, yes, it's a different place. And then when he was asked, well, aren't there hospitals closer to your home? He said, close to my home, there are no good hospitals. And then when he's given an opportunity again to explain this inconsistency, he can't offer a plausible explanation. He's asked, well, you said it was a half mile from your house, but this one's across town. Yes, well, it's on a approximate. And then he responds, I said approximate. And a couple of times he says, I said approximate. So it doesn't even indicate that he doesn't understand what a half mile is because he's given a couple of chances to maybe state, I didn't understand what a half mile was. And this inconsistency is material again, and it can be seen to have been enhancing his story because it goes to the issue of whether or not he was so badly injured that he actually had to be rushed to a close hospital. I mean, his whole story is that basically he was rendered unconscious by this beating. It was so bad. And his neighbors essentially saw him and just had to rush him to the nearest place. The idea that he was rushed to a hospital across a huge city when he was unconscious and so badly hurt is simply, you know, really raises a real question as to the validity of this story. The inconsistency is particularly material when viewed in light of the three findings of the U.S. Embassy. The there were larger, more well-known hospitals close to his house. There is no record at this hospital that the petitioner was one of two patients that was seen at this hospital to this day. So it was a very small hospital across town. Again, inconsistent with his story that he was rushed to the closest hospital. And the hospital certificate presented was false because the hospital administrator said that the hospital does not use the letterhead that the inconsistency is very significant to his claim that he suffered a very severe injury that would warrant asylum relief. The second inconsistency that was noted was the amount of time that he was hospitalized. Petitioner submitted both his own statement, personal statement, that he was admitted for over a month. And then also the hospital certificate states he was admitted for a certain period of time, which makes up about a month. He's given an opportunity to explain this. And he, so I'm sorry, when he then testifies, though, he says that he was in the hospital for about 15 days. And when he's challenged about the inconsistency with his being admitted for a month, he says, well, I stayed at the hospital for 15 days, but then I went back for treatment. But if you look at his testimony closely, he actually says, I was at the hospital for 15 days and I returned a few days later. So this isn't consistent with his explanation that the treatment actually covered an entire month, that he was basically going back and forth. Here's what gives me pause about the government's case. Taking all the discussion we've so far had, I'm not addressing that. This is not the way cases usually present with asylum seekers from poor countries. They tend to be fairly young men where it's pretty clear, and if they're not telling the truth, where it's pretty clear what they really are economic refugees. This is a man in his 60s who appears to have some wealth. He's got a house with a gate and a guard and all kinds of stuff. And we have other evidence that is not disputed that he is of this party and that he is a fairly important person in this party. And that the opposite is in opposition to the government. So, there's a lot about this case that says, you know, this is not your ordinary garden variety economic refugee who's lying to get into this country. So, on the other hand, I've got evidence about the hospital stuff that's entirely unconvincing. Can you help me out on that? Yeah, well, I think that, you know, certainly that, you know, all the facts have to be looked at in this case and the judge does have to make a determination. And the judge does look, presumably, at all the facts in the case. However, here, I mean, the inconsistencies, I think, were enough to give the immigration judge pause to the point where he doesn't really know what to believe. And in that kind of circumstance where there's just not any corroboration, again, there was no facts corroborating this incident. There wasn't a witness. There was not a person that was there afterwards or at the time. Well, there were lots of witnesses, according to his story, it's just they're not in court. Well, yeah, they weren't, none of them were produced. Right, right, yes. That's absolutely typical in these cases. I mean, he doesn't have the money to bring all these people over. Yeah, I mean, I, you know, with all due respect, Your Honor, the immigration judges, they see high volumes of cases. I mean, they are, you can see in this transcript that the immigration judge did try to give this petitioner numerous chances to explain himself. I'm not faulting the immigration judge. I think the immigration judge did it, you know, it was a totally fair hearing. Also gave the petitioner an opportunity to come back with map evidence as to the location of the hospital. None of that was ever produced. And significantly, the board on appeal, I would like to point out, noted that the petitioner never challenged any of these findings by the U.S. Embassy. Didn't raise one issue at all and still continues, even to this court, has not raised an issue to the finding of the fraudulent document, which is really damning to his case. Finally, the immigration judge also pointed out this inconsistency with the coming and going. In his written statement, he said he was walking back to his home. He said, and then he said he wasn't going anywhere. He said he was taking a walk. Then he said he was going to a different place. Then later on, on recross, he said something like he was going to a bakery or something. So it was really just there's no details at all regarding this day, which was obviously so apparently profound and important in his life. And certainly that also played into it. So ultimately, as I noted, this court and risk beholder has discussed the fact that even if there are a number of minor inconsistencies that individually might not be sufficient in a pre-real ID case to support the adverse credibility case finding, where there's several, as they are here, that go to the heart of this particular incident, they collectively can deprive the petitioner's claim of the ring of truth. And I think that's exactly what's happening in this case. There just simply wasn't enough for the immigration judge to be compelled to find that this was, that there was evidence of this case, that this incident actually occurred. In addition, the U.S. Embassy's finding provided an added indication of a dishonesty, as this court found in Carvey-Gonzalez, to support the adverse credibility finding. In conclusion, the agency's identified specific and cogent inconsistencies in the petitioner's evidence concerning a single event central to his claim. In light of these inconsistencies, and similar to this court's finding in Miyunga-Gonzalez, the findings of the U.S. Embassy, in addition to the inconsistent testimonies, are simply not enough for this court to find that there's a compelling finding that the petitioner is credible here, and that therefore, the agency properly denied asylum and withholding claims. There is also substantial evidence to support the denial of the petitioner's cat claim. Listen, if he's not believable, he's not believable, and that defeats the cat claim, too. Okay. Yes. Thank you. Thank you, Your Honor. You've got a minute and a half. Your Honor, I believe the Respondent in this case has fully explained each and every inconsistency that was on the record. There were five of them, and he explained them fully to the judge, and therefore, that should not be sufficient to sustain his credibility finding. I believe so, so long as it was explained and it was minor. It doesn't go to the heart of the claim. Okay. Thank you, Your Honor. Thank you both. Thank you very much. Thank both sides for their arguments. Howe later versus Holder is now submitted for decision.
judges: Tashima, Fletcher, Bybee